OPINION OF THE COURT
Lee L. Holzman, J.
In this contested accounting proceeding, objectant, Commis *47 sioner of Social Services of the City of New York, has moved for summary judgment sustaining the objections. Objectant asserts that she has the status of a preferred creditor of the estate pursuant to Social Services Law §§ 101,104 and 369 for Medicaid benefits rendered to decedent in the sum of $53,975.30.
Decedent died on November 14, 1986. Letters testamentary issued to respondent, decedent’s son, on October 8, 1987. Within two months of the issuance of letters, the executor had disbursed all of the assets in the payment of administration expenses, estate taxes and a distribution to himself as the sole beneficiary.
The executor concedes that he received a letter from the Human Resources Administration at the end of February 1988, which indicated that the "Estate Tracking Program” was in the process of determining the amount of the claim against decedent and requested that no distribution of assets of the estate be made until he received the verified proof of claim. He also concedes that on October 26, 1988 he received a $53,975 claim dated October 19, 1988. Nevertheless, he contends that the claim must be disallowed because it was not presented within seven months from the date he received letters testamentary and because he had no reason to know of its existence when the assets were disbursed. He also asserts that decedent was eligible for Medicare and, therefore, the city erred in providing Medicaid benefits and should not be reimbursed therefor.
Objectant contends that summary judgment should be granted on the claim for the following reasons: the executor disbursed the funds prior to the expiration of seven months from the date that letters issued to him, the executor’s distribution of assets was not made in good faith, and the failure of the executor to reject the claim prior to filing his account precludes him from presently contesting its validity.
Both sides have misconstrued the provisions of SCPA 1802. The fiduciary has responsibilities to the creditors as well as to the beneficiaries of the estate (Blood v Kane, 130 NY 514; Matter of Weinberg, 162 Misc 867; Estate of Smith, NYLJ, Apr. 9, 1987, at 15, col 2) and must act in good faith in the treatment of both of them (Matter of Goldberg, 14 AD2d 294, affd 12 NY2d 911; see also, Matter of Scadron, 34 Misc 2d 23). SCPA 1802 delicately balances the rights of creditors to receive that which is lawfully due to them, the rights of benefi *48 claries to receive their distributions from estates with reasonable expedition, and the rights of fiduciaries not to incur any personal liability when they have acted in good faith in dealing with both beneficiaries and creditors. SCPA 1802 achieves this balance by providing that if a claim is not presented within seven months of the issuance of letters or within an expedited period of time if the fiduciary opts to publish pursuant to SCPA 1801, the claimant is not entitled to any relief against the fiduciary for any distribution made to any other creditor or beneficiary "in good faith” before the fiduciary had reason to know of such claim. In summary, the statute does not act as a Statute of Limitations to bar claims presented after the seven-month period (see, Matter of Lee, 107 Misc 2d 928, 930) or constitute a prohibition against making distributions within the seven-month period but merely provides added protection to both a creditor who presents a claim within the seven-month period and to a fiduciary who waits until the expiration of the period to make distributions to beneficiaries.
The objectant’s contention that the payment to a beneficiary can never be in good faith when it is made prior to the seven-month period is without merit. Neither the language nor the spirit of the statute dictates that a distribution made to a beneficiary six months after the issuance of letters, and without any reason to know of the existence of any claim, should result in the imposition of liability upon a fiduciary in those instances when a creditor awakens from a slumber five years after the issuance of letters and then presents a claim. The executor’s position that he is relieved from any liability to a creditor provided that he had no reason to know of the claim at the time of the distribution and the claim was not presented within seven months is equally devoid of merit. Instead, the language and spirit of the statute support an interpretation that, whenever a claim is not presented within the seven-month period, the fiduciary shall not incur any liability to the claimant if in "good faith” there was no reason to know of the existence of the claim either within the seven-month period or prior to the time the distributions were made. Of course, the fiduciary can never be relieved of liability on the ground of a good-faith payment if he had reason to know of the claim’s existence within the seven-month period.
Here, the executor’s ostrich approach to the existence of creditors did not constitute good faith. At the very least, whenever there are any clues, good faith requires an investí *49 gation to determine the existence of possible claims against the estate (Matter of Swaab, 40 Misc 2d 767; Matter of Frommelt, 154 Misc 81). The executor’s contention of "good faith” distributions to others having shielded him from liability must fail when he concedes that he received a letter at the end of February 1988, less than five months after the issuance of letters, advising him of the possibility of the claim. Moreover, although a good portion of the claim results from outpatient visits to clinics, it would appear that the executor might have inquired of his mother as to how she paid for a hospitalization from November 30, 1984 to December 3, 1984 and for home attendants from October 1, 1986 to November 14, 1986.
Accordingly, based upon the undisputed facts, it is concluded that the executor could not have made a good-faith distribution to himself as a beneficiary within the seven-month period and that he is liable to the objectant for the distribution of estate assets to himself or to others as gifts. Moreover, even if the executor had properly distributed the assets to himself as a beneficiary, it appears that objectant could trace these assets into his hands as the beneficiary and recover them from him (see, EPTL 12-1.1; Jemzura v Jemzura, 36 NY2d 496; see also, Matter of Biel, 103 AD2d 287).
[Portions of opinion omitted for purposes of publication.]